Shauck, J.
First in logical order is the determination of the construction and effect of the will of William E. Ide, in view of the admitted and established facts. Those facts are as follows:
In 1845 Dr. Ide. being a widower, and having two children by his former marriage, they being the defendants William S. and George E. Ide, intermarried with the testatrix of the *240 plaintiffs. Two children were born of the second marriage, prior to 1870, and the four are the parties chiefly interested in this controversy.
Between 1850 arid 1855, Mrs. Ide received by inheritance real estate in the city of Columbus, known as the “ Jewett square property,” and legacies in money amounting to $75,-000.00. A considerable portion, at least, of this money was reduced to possession by Dr. Ide prior to 1856, and it, with about $4,000.00 inherited by himself, constituted the capital out of which he constructed the fortune which he left at his death in 1873. But prior to his death he had invested moneys in her name, and had so far used capital for her benefit, that when he died her estate was worth about twice the amount which she inherited; and at that time his estate was of only a little less value. The relation of debtor and creditor never existed between them, and he was never her trustee as to any portion of said money or the property in which it was invested.
In 1872 Dr. Ide made the will, of which a copy is attached to the cross-petition in this case; and Mrs. Ide made a will in his favor in case he should survive her, and containing similar provisions as to the four children.
In 1873 Dr. Ide died, and his said will was admitted to probate. Mrs. Ide thereupon in the probate court declared her election to accept the provisions of said will, and her election was entered on the journal of said court, and she also took possession of the entire estate left by Dr. Ide under the provisions of his said will, and continued in the control and enjoyment thereof until March, 1888, when she died. At the time of her death the value of what remained of the two estates was about $160,000.00.
Two lots conveyed by Mrs. Ide to William S. and George E. Ide in 1886 were of the value of $10,000 each at that time.
We have stated our conclusions as to the claims of fact made by the parties to this. controversy, although we think none of them material, except that Dr. Ide left a substantial *241 estate, and that upon his death Mrs. Ide took possession of it under the provisions of his will. A clear and apt statement of the doctrine of election which is invoked by the cross-petition is found in section 395 of Pomeroy’s Equity Jurisprudence : ■ -
“The owner of an estate having, in an instrument of donation, applied to the property of another expressions which, were that property his own, would amount to an effectual disposition of it to a third person, and having by the same instrument disposed of a portion of his own estate in favor of the proprietor whose rights he assumed, equity imposes upon that proprietor the duty of electing either to relinquish the benefit conferred upon him by the instrument, if he asserts his own inconsistent proprietary right; or if he accepts that benefit, to complete the intended disposition by conveying in-conformity to it, that portion of his own property -which it-purports to affect.”
This doctrine is founded upon the equitable consideration that one cannot accept the benefits conferred upon him by an instrument of this character, and repudiate the burdens which it imposes.
We do not understand that the soundness of this doctrine is questioned. Nor, if the terms of Dr. Ide’s will are sufficient to create a trust, do we perceive that there can be any doubt as to its application to this case for the purpose of effecting a disposition of both estates. Every provision of the will concerning his children in clear and express terms affects her estate as well as his. If the language is dispositive as to his own estate, it is equally so as to hers; and if he has applied to her estate expressions which would make a disposition of it if it were his own, her acceptance of the provisions in her favor gives to his will the effect to dispose of both estates.
Whether the terms of Dr. Ide’s will were sufficient to charge the estates in the hands of his widow with a trust in favor of his children, is the subject of real contention between the parties. Upon the theme of trusts created by the use of precatory *242 words, the courts of this country and of England, have uttered multitudinous and discordant notes. The cases upon the subject have been collected with industry and intelligence by counsel. Although we have examined the numerous cases cited, we shall not undertake, to analyze them. An effort at exhaustion would be only subjectively effective.
The items of the will of Dr. Ide that are relevant to this inquiry, are the following :
“ Second — I hereby devise and bequeath to my beloved wife, Harriet E. Ide, all my property of whatever kind, real and. personal, with power to sell and convey, or pay debts, or use in any way as she may choose.
“ Third — I request of her that our children, Appleton J. Ide and Julia B. Ide, together with my sons, Wm. S. Ide and George E. Ide, shall in all respects share equally in our mutual estate after all their expenses for education shall have been paid, my son, William S. Ide, having had and received previous to this date, the sum of five thousand dollars, which is to be charged to his share. Should I give a note for five thousand dollárs to my son, George E. Ide, that is to be paid, and charged to his share. Said note, if given, will be dated back to a time when he was of the age that was William S. Ide when he received five thousand dollars.
“ Seventh — Should my wife die at or near the same time with myself, then, and in that case, I desire that her estate and mine be combined, and divided equally among our several children, including William S. Ide and George E. Ide, after each is charged with whatever he or she may have received, after paying the expenses of their education. Should anything happen in case as above, by which it would not be convenient to combine our estates, then I desire that my estate shall be so used as to effect as near as possible, an equal division of her estate and mine between our children and my two oldest sons, the latter receiving their share out of my estate, and the former out of hers, in a way to effect an equal division, as near as possible.
*243 “Eighth — In case my wife survives me, I desire that she have entire control of my estate, and divide and pay to our children only when and as she may desire.”
Against the claim that the estate in the hands of the immediate devisee was charged with a trust in favor of the four children of the testator, it is said that the second item of the will in clear and unambiguous language gave to Mrs. Ide an unqualified estate in all the testator’s property, and that subsequent language cannot have the effect to limit or qualify that estate, unless it be equally clear and unambiguous. It is to be observed, however, that the second item did not in express terms confer upon the immediate devisee the power of testamentary disposition which she undertook to exercise; nor did it confer upon her any authority that is inconsistent with the trust asserted. The power of alienation, re-investment and use by her, were unquestionably given by this item. The trust asserted by the defendants concedes this. They claim only that the trust in favor of the children attached to what might remain of the estates after she had exercised that power.
It is also urged that the testator’s children take nothing under the seventh item, because the provision there was upon the condition that the immediate devisee should die at ornear the same time with the testator, whereas she survived him by fifteen years. The first sentence in this item is substantially a repetition of the second item. The repetition was probably made with a view to annexing a provision to be effective in the contingency then contemplated by the testator: that if his wife should long survive him, exercising as to both estates the power to sell and re-in vest, and the right to use, the two estates would become so far blended that it would not be practicable to distinguish between them in the division; but if her death should occur near his own, the two estates would remain distinct, and a division substantially equal might be made without combining the estates.
*244 Whatever may be the true intent of this item, it affords no grounds for the supposition that the testator’s desire to provide for his children was conditional upon the duration of his wife’s survivorship; or that the estate which she took under the will was to be augmented by lapse of time.
But, as in all cases of this character, controlling effect is due to the intention of the testator, and that intention must be gathered from the entire will. However conflicting may be the decisions upon this subject, however much they may have been influenced by considerations of natural equity, or the personal sympathies of chancellors, they are in substantial accord with the rule that where from the entire scope of a will and all of its terms it appears that the testator intended to charge the estate in the hands of his immediate devisee with a trust in favor of others, the court will give effect to that intention whether the terms be in form dispositive, peremptory, or precatory only. The conflict of decisions concerns rules of interpretation that are subordinate to this. That trusts may be created by wills which employ terms that are precatory in form, is sustained by reason as well as authority. The right to make last wills and testaments is statutory. The legal and natural object of such instruments is the disposition of property. Testamentary capacity and testamentary intention are joined in their execution. They give effect to the testator’s desire with reference to the disposition of his estate, and when they employ words that are clearly expressive of a desire, courts proceed upon logical considerations when they accord to them dispositive force, unless the will shows that they were used in a different sense. That the word “ desire ” is sufficient to impress a trust upon property in the hands of the immediate devisee in favor of others, is held in Brasher v. Marsh, 15 Ohio St. 103. Less vigorous forms of expression have been accorded the same effect in the numerous cases cited in Hawkins on Wills, 161-2, and Beach on Wills, 215-220.
Nor does the most careful consideration of the general terms and scope of Dr. Ide’s will justify the claim that these words *245 were used in any other sense than that which reason and the authorities accord to them when found in instruments that are executed for the purpose of disposing of property. The contention of the plaintiffs, broadly stated, is that in the interpretation of this will, the court should utterly ignore the third and seventh items, thus omitting from consideration the larger portion of the instrument. The framing of these items was obviously the subject of the testator’s chief care. They show that the equal division of the estates among the four children, including his two eldest sons, was, to him, the matter of chief concern, unless it was the ample power given to his wife to enjoy and control the property during her life. The considerations and the mandatory and specific directions, that in the divisions among the four children, his son William should be charged with an advancement of five thousand dollars already made to him; that his son George should be charged with an advancement which he contemplated, if it should be made, and that each of the four should be charged with advancements that his wife might make during her life, are inconsistent with the view that these items were inserted in the will as mere suggestions to his immediate devisee.
It is also significant that after the framing of the first seven items, the testator, in apparent doubt whether the third and seventh items might not operate to restrict the control which he had in the second item given to his wife, inserted the eighth item, making clear his intention that she should have entire control of the estate, and have unrestrained discretion as to divisions of property among the children during her life, but without retracting his previous direction that in the ultimate division each should be charged with such advancements as she might choose to make. Why should he now direct that she should have control of the property, if he had already given her an unqualified estate in fee ?
The fourth and fifth items of the will in brief terms “ commend” to the immediate devisee the Hannah Neil Mission, and any charities to his friends or relatives that she might *246 think him under obligations to bestow if he were alive. They show that the testator was familiar with terms appropriate to mere commendation.
Harrison, Olds &. Marsh, and Booth & Keating, for plaintiff.
J. T. Holmes, Nash & Lentz, and Frank Davis, contra.
The testator had two purposes that were fixed. That his wife should have unrestricted control and enjoyment of these estates during her life, with power to make advancements to the four children at her discretion ; and that at her death they should be divided equally among the four children. These purposes are entirely consistent. They appear in the will. They are the purposes which grow naturally in the affections of a husband and father.
It is true that Ur. Ide had no testamentary power over his wife’s estate. Rut her election to accept the benefits of the will in which he assumed to dispose of both estates, indicates, either that his declared purpose that at her death the two estates should be divided equally among the four children, was consistent with her own desire at the time of her election; or that in consideration of the enjoyment and control of his entire estate to the exclusion of his heirs at law she was willing to affirm his attempted disposition of her estate. By whatever motive her election was prompted, its legal effect was to pass both estates to the four children equally, subject to advancements.
This conclusion makes it unnecessary to place a construction upon the will of Mrs. Ide, as prayed for in the petition.